**IN THE CIRCUIT COURT OF YALOBUSHA COUNTY, STATE OF MISSISSIPPI**
**SECOND JUDICIAL DISTRICT**

**GREEN JONES, JR.; SANDRA JONES; MARY JUDSON; PATRICIA CAROLYN KACHELEIN; HILDA KEE; JOHN KEEL; DAVID KEHOE; VANESSA KELLY; GEORGE WILLIE KIMBLE; BETTY JEAN KIRK; LAWRENCE LEIGH; RUBY DIANE LUMAS; MYRON B. MARTIN; KATHERINE MATTHEWS; JESSE MCCOLLINS; WILLIAM MISTER; TAMMY R. MOORE; BRUCE MORGAN; GERTIE MORRIS; JERRY MURPHREE; MARY PARKER; PATRICIA HARMON PARKER; GEORGE PEACOCK; BARBARA ANN PERSON; MARY PHILLIPS; ROY LEE PHILLIPS; SHIRLEY PHILLIPS; WAYNE HOWARD PHILLIPS; BILLY DEWIGHT PILCHER; VIRA MAE POLK, JOE POMERLEE; SHIRLEY POMERLEE; MARY LEE POTTS; WILLIE PULLEY; EARLINE RICHARDSON; JOHN ROBERSON; ANTHONY ROBINSON; MATTIE E. ROBINSON; JOYCE ROGERS; LYNDA ROGERS; MICHAEL ROGERS; MAXINE P. ROSS; HAZEL ROUNDS; WALTER ROUNDS; LIB SANFORD; EUGENE SHAW; CHARLES EDWARD SIMS; ISAAC SMITH; TOMMIE TURNER, INDIVIDUALLY, AND AS REPRESENTATIVE OF THE WRONGFUL DEATH BENEFICIARIES OF ANNIE RUTH NICHOLSON; VICKIE JOHNSON WALLER; AND MARY LOUISE WHITE**

USDC No.: 3:26-cv-133-GHD-RP

**PLAINTIFFS**

**V.**

**CAUSE NO.:** CV-2026-34-SMY2

**DETREX CORPORATION;**
**ITALMATCH USA CORPORATION;**
**WSP USA INC.;**
**FIRST ENVIRONMENT, INC.;**
**AAE CONSULTING, LLC;**
**DAMES & MOORE, INC.;**
**W.L. BURLE ENGINEERS, P.A.;**
**AVANT CONSTRUCTION; KEVIN MOORE;**
**MICHAEL SLACK;**
**JOHN DOE CORPORATIONS 1-5**

**DEFENDANTS**

**COMPLAINT**
***JURY TRIAL DEMANDED***

**COME NOW**, Plaintiffs Green Jones, Jr., Sandra Jones, Mary Judson , Patricia Carolyn Kachelein, Hilda Kee, John Keel, David Kehoe, Vanessa Kelly, George Willie Kimble, Betty Jean Kirk, Lawrence Leigh, Ruby Diane Lumas, Myron B. Martin, Katherine Matthews, Jesse McCollins, William Mister, Tammy R. Moore, Bruce Morgan, Gertie Morris, Jerry Murphree, Mary Parker, Patricia Harmon Parker, George Peacock, Barbara Ann Person, Mary Phillips, Roy Lee Phillips, Shirley Phillips, Wayne Howard Phillips, Billy Dewight Pilcher, Vira Mae Polk, Joe Pomerlee, Shirley Pomerlee, Mary Lee Potts, Willie Pulley, Earline Richardson, John Roberson, Anthony Robinson, Mattie E. Robinson, Joyce Rogers, Michael Rogers, Maxine P. Ross, Hazel Rounds, Walter Rounds, Lib Sanford, Eugene Shaw, Charles Edward Sims, Isaac Smith, Tommie Turner, individually, and as representative of the Wrongful Death Beneficiaries of Annie Ruth Nicholson, Vickie Johnson Waller, Mary Louise White, by and through their undersigned counsel, and assert the following causes of action against Defendants Detrex Corporation, Italmatch USA Corporation, WSP USA Inc., First Environment, Inc., AAE Consulting, LLC, Dames & Moore, Inc., W.L. Burle Engineers, P.A., Avant Construction, Kevin Moore, Michael Slack, and John Doe Corporations 1-5 as follows:

## INTRODUCTION

1. For more than fifty years, the Defendants in this lawsuit have engaged in continuous acts which have had the result of poisoning the people, environment, and the community of Water Valley, Mississippi, and Yalobusha County. The purpose of this lawsuit is to seek justice on behalf of the victims who were exposed to the toxic chemical trichloroethylene.[1]

## PARTIES

2. This suit is focused upon various parties involved in the operation of a Facility located at 600 Highway 32 East, Water Valley, Yalobusha County, Mississippi (hereinafter "the Facility"), while it

[1] A more detailed description of the nature and dangers of this toxic chemical is contained further below.

was owned and/or operated by the Holley Automotive Division of Colt Industries, Inc., Colt Industries, Inc., Coltec Industries, Inc., Coltec, Inc., Enpro Industries, Inc., and/or Enpro Holdings, Inc.[2] from 1972 through 1996 and BorgWarner, Inc. from 1996 until 2015. Through various corporate mergers, Goodrich Corporation is believed to have assumed environmental liabilities from the Facility in 1999, and then quickly attempted to transfer those liabilities to OldCo, LLC, and subsequently to EnPro Industries and EnPro Holdings through 2001 and 2002. The Facility is operated at present by Solero Technologies, LLC and/or BorgWarner Emissions Systems LLC.

3. Green Jones, Jr. is an adult resident citizen of the State of Mississippi who resides at 1951 County Road 52, Oakland, Mississippi 38948. Green Jones, Jr. worked in the Facility from approximately January 1, 1980, to December 31, 1985. During that time, Green Jones was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Green Jones, Jr. is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, kidney damage, neuropathy, siezures, autoimmune/immune system suppression, rashes and skin irritation, and respiratory system problems.

4. Sandra Jones is an adult resident citizen of the State of Mississippi who resides at 250 Highway 7, Water Valley, Mississippi 38965. Sandra Jones worked in the Facility from approximately January 1, 1980, to January 1, 2009. During that time, Sandra Jones was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Sandra Jones is a victim of trichloroethylene exposure at the

---

[2] It is unclear from publicly available documents which entity owned and/or operated the Facility prior to its sale to BorgWarner, Inc. or when any such ownership and/or operation occurred. However, Enpro Industries, Inc. has represented to its investors that the sale of the Facility occurred in 1996 and that Enpro Holdings, Inc. had been managing liabilities at the site since that time, though it also informed the Mississippi Department of Environmental Quality that it did not acquire any liability for the Facility until 2002. *See* Ex. 1, Enpro Industries, Inc. Securities and Exchange Commission Form 10-Q dated November 5, 2019, at p. 23; Ex. 2, Agreed Order dated February 5, 2016 in Mississippi Commission on Environmental Quality Cause No. 661716.

Facility and has been diagnosed with connective tissue disorder, autoimmune/immune system suppression, and respiratory system problems.

5. Mary Judson is an adult resident citizen of the State of Mississippi who resides at 208 Drive, Water Valley, Mississippi 38965. Mary Judson worked in the Facility from approximately June 10, 1978, to June 1, 2010. During that time, Mary Judson was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Mary Judson is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, rashes and skin irritation, and respiratory system problems.

6. Patricia Carolyn Kachelein is an adult resident citizen of the State of Mississippi who resides at 100 County Road 382, Water Valley, Mississippi 38965. Patricia Carolyn Kachelein worked in the Facility from approximately January 1, 1979, to January 1, 2006. During that time, Patricia Carolyn Kachelein was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Patricia Carolyn Kachelein is a victim of trichloroethylene exposure at the Facility and has been diagnosed with neuropathy, tremors, and the development of tumors on her feet, requiring removal.

7. Hilda Kee is an adult resident citizen of the State of Mississippi who resides at 490 County Road 167, Coffeeville, Mississippi 38922. Hilda Kee worked in the Facility from approximately January 1, 1979, to January 1, 1989. During that time, Hilda Kee was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Hilda Kee is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, neuropathy, and end stage renal disease.

8. John Keel is an adult resident citizen of the State of Mississippi who resides at 379 County Road 259, Bruce, Mississippi 38915. John Keel worked in the Facility from approximately January 1, 1974, to January 1, 2017. During that time, John Keel was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. John Keel is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, rashes and skin irritation, and respiratory system problems.

9. David Kehoe is an adult resident citizen of the State of Mississippi who resides at 110 Stonewall Street, Okolona, Mississippi 38860. David Kehoe worked in the Facility from approximately January 1, 1980, to January 1, 1995. During that time, David Kehoe was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. David Kehoe is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, neuropathy, tremors, rashes and skin irritation, and respiratory system problems.

10. Vanessa Kelly is an adult resident citizen of the State of Mississippi who resides at 411 East Lee Street, Water Valley, Mississippi 38965. Vanessa Kelly worked in the Facility from approximately January 1, 1980, to January 1, 1982. During that time, Vanessa Kelly was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Vanessa Kelly is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, fatty liver disease, neuropathy, and rashes and skin irritation.

11. George Willie Kimble is an adult resident citizen of the State of Mississippi who resides at 1661 County Road 232, Oakland, Mississippi 38948. George Willie Kimble worked in the Facility from

approximately April 19, 1979, to November 18, 2008. During that time, George Willie Kimble was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. George Willie Kimble is a victim of trichloroethylene exposure at the Facility and has been diagnosed with neuropathy, rashes and skin irritation, and the development of colon polyps that required removal.

12. Joy Ann Kimble is an adult resident citizen of the State of Mississippi who resides at 3186 James Robert Drive, Southaven, Mississippi 38671. Joy Ann Kimble worked in the Facility from approximately January 1, 1981, to January 1, 1985. During that time, Joy Ann Kimble was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Joy Ann Kimble is a victim of trichloroethylene exposure at the Facility and has been diagnosed with kidney disease, tremors, autoimmune/immune system suppression, decreased reproductive hormones, and multiple sclerosis.

13. Betty Jean Kirk is an adult resident citizen of the State of Mississippi who resides at 100 Pine Valley Road, Water Valley, Mississippi 38965. Betty Jean Kirk worked in the Facility from approximately January 1, 1992, to January 1, 1995. During that time, Betty Jean Kirk was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Betty Jean Kirk is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, neuropathy, seizures, cognitive neurodevelopmental defects, autoimmune/immune system suppression, and dermatological issues.

14. Lawrence Leigh is an adult resident citizen of the State of Mississippi who resides at 609 County Road 432, Coffeeville, Mississippi 38922. Lawrence Leigh worked in the Facility from approximately April 1, 1973, to February 1, 2006. During that time, Lawrence Leigh was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility

and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Lawrence Leigh is a victim of trichloroethylene exposure at the Facility and has been diagnosed with neuropathy, cardiac arrhythmia, dermatologic issues, including the development of boils over his entire body, development of a tumor on his right ear that has been removed, and development of a cysts on/near the scrotum and buttocks area.

15. Ruby Diane Lumas is an adult resident citizen of the State of Mississippi who resides at 1894 County Road 85, Coffeeville, Mississippi 38922. Ruby Diane Lumas worked in the Facility from approximately March 1, 1972, to February 28, 2019. During that time, Ruby Diane Lumas was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Ruby Diane Lumas is a victim of trichloroethylene exposure at the Facility and has been diagnosed with motor neurodevelopmental defects, cognitive neurodevelopmental defects, rashes and skin irritation, respiratory system problems, and central nervous system changes.

16. Myron B. Martin is an adult resident citizen of the State of Mississippi who resides at 1630 Fairground Road, Grenada, Mississippi 38901. Myron B. Martin worked in the Facility from approximately January 1, 1979, to December 31, 1986. During that time, Myron B. Martin was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Myron B. Martin is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, neuropathy, tremors, respiratory system irritation, and rashes and skin irritation.

17. Katherine Matthews is an adult resident citizen of the State of Mississippi who resides at 114 County Road 87, Coffeeville, Mississippi 38922. Katherine Matthews worked in the Facility from approximately September 1, 1977, to November 30, 1989. During that time, Katherine Matthews was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at

the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Katherine Matthews is a victim of trichloroethylene exposure at the Facility and has been diagnosed with breast cancer, cervical cancer, rashes and skin irritation, miscarriage, and respiratory system problems.

18. Jesse McCollins is an adult resident citizen of the State of Mississippi who resides at 20671 Highway 330, Tillatoba, Mississippi 38961. Jesse McCollins worked in the Facility from approximately October 1, 1973, to January 1, 1975. During that time, Jesse McCollins was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Jesse McCollins is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia and kidney disease.

19. Keith Miller is an adult resident citizen of the State of Mississippi who resides at 119 County Road 498, Water Valley, Mississippi 38965. Keith Miller worked in the Facility from approximately May 13, 1977, to April 1, 2021. During that time, Keith Miller was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Keith Miller is a victim of trichloroethylene exposure at the Facility and has been diagnosed with kidney damage, rashes and skin irritation, liver damage, and respiratory system problems.

20. William Mister is an adult resident citizen of the State of Mississippi who resides at 62 County Road 441, Coffeeville, Mississippi 38922. William Mister worked in the Facility from approximately January 1, 1993, to January 1, 2008. During that time, William Mister was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. William Mister is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, respiratory system problems, and decreased sperm quality/count.

21. Tammy R. Moore is an adult resident citizen of the State of Mississippi who resides at 100 Simmons Street, Water Valley, Mississippi 38965. Tammy R. Moore worked in the Facility from approximately March 4, 1992, to June 4, 1996. During that time, Tammy R. Moore was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Tammy R. Moore is a victim of trichloroethylene exposure at the Facility and has been diagnosed with thyroid cancer, cardiac arrhythmia, kidney damage, and respiratory system problems.

22. Bruce Morgan is an adult resident citizen of the State of Mississippi who resides at 1330 Joiner Road, Batesville, Mississippi 38606. Bruce Morgan worked in the Facility from approximately August 1, 1980, to July 5, 2004. During that time, Bruce Morgan was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Bruce Morgan is a victim of trichloroethylene exposure at the Facility and has been diagnosed with rashes and skin irritation and chronic gastrointestinal discomfort.

23. Gertie Morris is an adult resident citizen of the State of Mississippi who resides at 819 Rockhill Road, Sardis, Mississippi 38666. Gertie Morris worked in the Facility from approximately August 1, 1999, to August 1, 2008. During that time, Gertie Morris was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Gertie Morris is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, and central nervous system changes.

24. Jerry Murphree is an adult resident citizen of the State of Mississippi who resides at 567 County Road 136, Pittsboro, Mississippi 38951. Jerry Murphree worked in the Facility from approximately June 1, 1973, to October 1, 2006. During that time, Jerry Murphree was exposed to trichloroethylene by

drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Jerry Murphree is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia and liver damage.

25. Mary Parker is an adult resident citizen of the State of Mississippi who resides at 963 County Road 18, Water Valley, Mississippi 38965. Mary Parker worked in the Facility from approximately September 5, 1978, to December 31, 2007. During that time, Mary Parker was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Mary Parker is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, chronic kidney disease, neuropathy, decreased reproductive hormones, and respiratory system problems.

26. Patrick Harmon Parker is an adult resident citizen of the State of Mississippi who resides at 963 County Road 18, Water Valley, Mississippi 38965. Patrick Harmon Parker worked in the Facility from approximately January 1, 1989, to December 31, 1991. During that time, Patrick Harmon Parker was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Patrick Harmon Parker is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, neuropathy, and the development of cysts on both his kidney and prostate.

27. George Peacock is an adult resident citizen of the State of Mississippi who resides at 150 Goodwin Drive, Grenada, Mississippi 38901. George Peacock worked in the Facility from approximately January 1, 1992, to December 31, 2020. During that time, George Peacock was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. George Peacock is a victim of trichloroethylene exposure at the

Facility and has been diagnosed with central nervous system changes, dizziness, chronic headaches, rashes and skin irritation, and enlargement of prostate.

28. Barbara Ann Person is an adult resident citizen of the State of Mississippi who resides at 1201 Campus Street, Water Valley, Mississippi 38965. Barbara Ann Person worked in the Facility from approximately October 18, 1977, to September 14, 2015. During that time, Barbara Ann Person was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Barbara Ann Person is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, and respiratory system problems.

29. Mary Phillips is an adult resident citizen of the State of Mississippi who resides at 300 Blackmur Drive, Unit HH7, Water Valley, Mississippi 38965. Mary Phillips worked in the Facility from approximately January 1, 1983, to January 1, 1988. During that time, Mary Phillips was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Mary Phillips is a victim of trichloroethylene exposure at the Facility and has been diagnosed with kidney damage, liver damage, tremors, siezures, central nervous system changes, frontal lobe dementia, cardiac arrhythmia, and autoimmune/immune system suppression.

30. Roy Lee Phillips is an adult resident citizen of the State of Mississippi who resides at 292 Fly Street, Water Valley, Mississippi 38965. Roy Lee Phillips worked in the Facility from approximately March 1, 1978, to October 30, 2004. During that time, Roy Lee Phillips was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Roy Lee Phillips is a victim of trichloroethylene exposure at the

Facility and has been diagnosed with neuropathy, autoimmune/immune system suppression, respiratory system problems, and chronic migraines.

31. Shirley Phillips is an adult resident citizen of the State of Mississippi who resides at 292 Fly Street, Water Valley, Mississippi 38965. Shirley Phillips worked in the Facility from approximately January 1, 1979, to November 30, 2008. During that time, Shirley Phillips was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Shirley Phillips is a victim of trichloroethylene exposure at the Facility and has been diagnosed with neuropathy and respiratory system problems.

32. Wayne Howard Phillips is an adult resident citizen of the State of Mississippi who resides at 6841 County Road 225, Water Valley, Mississippi 38965. Wayne Howard Phillips worked in the Facility from approximately May 26, 1992, to November 21, 2025. During that time, Wayne Howard Phillips was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Wayne Howard Phillips is a victim of trichloroethylene exposure at the Facility and has been diagnosed with respiratory system problems and the development of an enlarged prostate.

33. Billy Dewight Pilcher is an adult resident citizen of the State of Mississippi who resides at 22 County Road 389, Water Valley, Mississippi 38965. Billy Dewight Pilcher worked in the Facility from approximately September 1, 1977, to September 26, 2006. During that time, Billy Dewight Pilcher was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Billy Dewight Pilcher is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, respiratory system problems, and chronic kidney disease.

34. Vira Mae Polk is an adult resident citizen of the State of Mississippi who resides at 432 Martin Street, Water Valley, Mississippi 38965. Vira Mae Polk worked in the Facility from approximately January 1, 1971, to January 1, 2005. During that time, Vira Mae Polk was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Vira Mae Polk is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia and tremors.

35. Joe Pomerlee is an adult resident citizen of the State of Mississippi who resides at 304 County Road 115, Water Valley, Mississippi 38965. Joe Pomerlee worked in the Facility from approximately July 15, 1973, to March 31, 1979. During that time, Joe Pomerlee was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Joe Pomerlee is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, kidney damage, autoimmune/immune system suppression, and respiratory system problems.

36. Shirley Pomerlee is an adult resident citizen of the State of Mississippi who resides at 304 County Road 115, Water Valley, Mississippi 38965. Shirley Pomerlee worked in the Facility from approximately March 1, 1973, to December 1, 2007. During that time, Shirley Pomerlee was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Shirley Pomerlee is a victim of trichloroethylene exposure at the Facility and has been diagnosed with tremors, autoimmune/immune system suppression, respiratory system problems, and dizziness.

37. Mary Lee Potts is an adult resident citizen of the State of Mississippi who resides at 1134 Wyatte Tyro Road, Senatobia, Mississippi 38668. Mary Lee Potts worked in the Facility from

approximately January 1, 1977, to December 31, 1980. During that time, Mary Lee Potts was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Mary Lee Potts is a victim of trichloroethylene exposure at the Facility and has been diagnosed with breast cancer, kidney failure, respiratory system problems, and memory loss.

38. Willie Pulley is an adult resident citizen of the State of Mississippi who resides at 960 Thorton Street, Water Valley, Mississippi 38965. Willie Pulley worked in the Facility from approximately January 29, 1972, to January 5, 2007. During that time, Willie Pulley was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Willie Pulley is a victim of trichloroethylene exposure at the Facility and has been diagnosed with rashes and skin irritation and kidney damage.

39. Earline Richardson is an adult resident citizen of the State of Mississippi who resides at 1058 Coulter Drive, Tillatoba, Mississippi 38961. Earline Richardson worked in the Facility from approximately January 1, 1973, to January 1, 2017. During that time, Earline Richardson was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Earline Richardson is a victim of trichloroethylene exposure at the Facility and has been diagnosed with tremors, rashes and skin irritation, and respiratory system problems.

40. Elizabeth Kay Richardson is an adult resident citizen of the State of Mississippi who resides at 706 Wise Street, Water Valley, Mississippi 38965. Elizabeth Kay Richardson worked in the Facility from approximately February 14, 1977, to July 31, 2023. During that time, Elizabeth Kay Richardson was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's

internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Elizabeth Kay Richardson is a victim of trichloroethylene exposure at the Facility and has been diagnosed with rashes and skin irritation, respiratory system problems, and tracheal stenosis, requiring surgery to restructure her trachea.

41. John Roberson is an adult resident citizen of the State of Mississippi who resides at 15293 County Road 436, Coffeeville, Mississippi 38922. John Roberson worked in the Facility from approximately January 1, 1980, to January 1, 1986. During that time, John Roberson was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. John Roberson is a victim of trichloroethylene exposure at the Facility and has been diagnosed with respiratory system problems, including asthma, cardiac arrhythmia, and rashes and skin irritation.

42. Anthony Robinson is an adult resident citizen of the State of Mississippi who resides at 2234 County Road 25, Water Valley, Mississippi 38965. Anthony Robinson worked in the Facility from approximately October 16, 1979, to July 15, 1988. During that time, Anthony Robinson was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Anthony Robinson is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, central nervous system changes, and respiratory system problems.

43. Mattie E. Robinson is an adult resident citizen of the State of Mississippi who resides at 2234 County Road 25, Water Valley, Mississippi 38965. Mattie E. Robinson worked in the Facility from approximately August 1, 1973, to April 1, 1997. During that time, Mattie E. Robinson was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Mattie E. Robinson is a victim of trichloroethylene

exposure at the Facility and has been diagnosed with neuropathy, cardiac arrhythmia, rashes and skin irritation, and chronic kidney disease.

44. Joyce Rogers is an adult resident citizen of the State of Mississippi who resides at 100 Simmons Street, Unit HH147, Water Valley, Mississippi 38965. Joyce Rogers worked in the Facility from approximately January 1, 2008, to January 1, 2009. During that time, Joyce Rogers was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Joyce Rogers is a victim of trichloroethylene exposure at the Facility and has been diagnosed with chronic kidney disease, rashes and skin irritation, and respiratory system problems.

45. Lynda Rogers is an adult resident citizen of the State of Mississippi who resides at 176 County Road 107, Water Valley, Mississippi 38965. Lynda Rogers worked in the Facility from approximately January 1, 1981, to January 1, 1982. During that time, Lynda Rogers was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Lynda Rogers is a victim of trichloroethylene exposure at the Facility and has been diagnosed with liver damage, neuropathy, tremors, cardiac arrhythmia, rashes and skin irritation, miscarriage, respiratory system problems, dizziness, eye irritation, including blurry vision, headaches, and chronic nausea and other gastrointestinal discomfort.

46. Michael Rogers is an adult resident citizen of the State of Mississippi who resides at 2935 County Road 123, Water Valley, Mississippi 38965. Michael Rogers worked in the Facility from approximately January 1, 1979, to October 22, 2025. During that time, Michael Rogers was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Michael Rogers is a victim of trichloroethylene

exposure at the Facility and has been diagnosed with kidney damage, neuropathy, tremors, rashes and skin irritation, respiratory system problems, including asthma, chronic headaches, and dizziness.

47. Maxine P. Ross is an adult resident citizen of the State of Mississippi who resides at 6701 County Road 225, Water Valley, Mississippi 38965. Maxine P. Ross worked in the Facility from approximately January 1, 1977, to November 4, 2025. During that time, Maxine P. Ross was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Maxine P. Ross is a victim of trichloroethylene exposure at the Facility and has been diagnosed with tremors, rashes and skin irritation, the development of nodules on her thyroid, and the development of fibroid tumors on her uterus, requiring a hysterectomy.

48. Hazel Rounds is an adult resident citizen of the State of Mississippi who resides at 2518 County Road 169, Coffeeville, Mississippi 38922. Hazel Rounds worked in the Facility from approximately January 1, 1978, to November 4, 2025. During that time, Hazel Rounds was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Hazel Rounds is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia and kidney damage.

49. Walter Rounds is an adult resident citizen of the State of Mississippi who resides at 2518 County Road 169, Coffeeville, Mississippi 38922. Walter Rounds worked in the Facility from approximately April 23, 1973, to January 1, 2019. During that time, Walter Rounds was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Walter Rounds is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia, neuropathy, tremors, respiratory system problems, enlarged prostate, chronic stomach discomfort, and rashes and skin irritation.

50. Lib Sanford is an adult resident citizen of the State of Mississippi who resides at 4727 Eureka Road, Batesville, Mississippi 38606. Lib Sanford worked in the Facility from approximately January 1, 2004, to January 1, 2012. During that time, Lib Sanford was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Lib Sanford is a victim of trichloroethylene exposure at the Facility and has been diagnosed with respiratory system problems, neuropathy, and chronic stomach discomfort.

51. Eugene Shaw is an adult resident citizen of the State of Mississippi who resides at 2130 Highway 315 North, Water Valley, Mississippi 38965. Eugene Shaw worked in the Facility from approximately January 1, 1988, to December 31, 1990. During that time, Eugene Shaw was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Eugene Shaw is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia and respiratory system problems.

52. Charles Edward Sims is an adult resident citizen of the State of Mississippi who resides at 330 Suggs Street, Water Valley, Mississippi 38965. Charles Edward Sims worked in the Facility from approximately January 1, 1980, to January 1, 1995. During that time, Charles Edward Sims was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Charles Edward Sims is a victim of trichloroethylene exposure at the Facility and has been diagnosed with prostate cancer and kidney cancer.

53. Isaac Smith is an adult resident citizen of the State of Mississippi who resides at 45 County Road 71, Coffeeville, Mississippi 38922. Isaac Smith worked in the Facility from approximately January 1, 1979, to January 1, 2018. During that time, Isaac Smith was exposed to trichloroethylene by drinking

water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Isaac Smith is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia and respiratory system problems.

54. Tommie Turner is an adult resident citizen of the State of Mississippi who resides at 1207 Robinson Street, Water Valley, Mississippi 38965. Tommie Turner files this lawsuit on behalf of himself and all other wrongful death beneficiaries of Annie Ruth Nicholson. Annie Ruth Nicholson worked in the Facility from approximately January 1, 1969, to July 1, 2014. During that time, Annie Ruth Nicholson was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Annie Ruth Nicholson is a victim of trichloroethylene exposure at the Facility, having been diagnosed with ovarian cancer, cervical cancer, and rashes and skin irritation. Annie Ruth Nicholson passed away on or about July 11, 2014 from cervical cancer.

55. Vickie Johnson Waller is an adult resident citizen of the State of Mississippi who resides at 46 County Road 60, Coffeeville, Mississippi 38922. Vickie Johnson Waller worked in the Facility from approximately March 1, 1981, to October 31, 2008. During that time, Vickie Johnson Waller was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Vickie Johnson Waller is a victim of trichloroethylene exposure at the Facility and has been diagnosed with cardiac arrhythmia and respiratory system problems.

56. Mary Louise White is an adult resident citizen of the State of Mississippi who resides at 12347 Highway 51, Oakland, Mississippi 38948. Mary Louise White worked in the Facility from approximately April 1, 1985, to May 1, 2016. During that time, Mary Louise White was exposed to trichloroethylene by drinking water which had become contaminated with trichloroethylene at the Facility

and/or through the intrusion of trichloroethylene vapors into the Facility's internal atmosphere, and/or absorption of trichloroethylene through dermal contact. Mary Louise White is a victim of trichloroethylene exposure at the Facility and has been diagnosed with rashes and skin irritation, and respiratory system problems.

57. Defendant Italmatch USA Corporation is a corporation formed under the laws of the State of Illinois. Italmatch USA may be served with process by service upon its registered agent, Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703. Italmatch USA Corporation lists with the Georgia Corporations Division a principal office address located at 5544 Oakdale Road SE, Smyrna, Georgia, 30082. On information and belief, Italmatch USA Corporation entered into a purchase and merger agreement with Defendant Detrex Corporation in a fashion in which it acquired responsibility for that defendant's liability.

58. Defendant Detrex Corporation is a corporation organized and existing under the laws of the State of Michigan which, upon information and belief, maintains its corporate headquarters and principal place of business at 1000 Belt Line Street, Cleveland, Ohio 44109. Detrex Corporation may be served with process by service upon its registered agent, CSC – Lawyers Incorporating Service, 3410 Belle Chase Way, Ste 600, Lansing, Michigan 48911. Detrex Corporation is not registered to do business in the State of Mississippi and, upon information and belief, does not do any business within the State of Mississippi. On information and belief, Detrex Corporation was fully purchased by and merged with Defendant Italmatch USA Corporation.

59. Defendant WSP USA Inc. is a corporation organized and existing under the laws of the State of New York which maintains its principal office at One Penn Plaza, 4th Floor, New York, New York 10119. It presently maintains its local office, according to its own website, at 115 Aulenbrock Drive, Canton, Mississippi, 39046. It lists its registered agent contact for the State of Mississippi as CT Corporation System, 8927 Lorraine Rd., Suite 204-A, Gulfport, Mississippi 39503. WSP USA Inc. is named as a defendant because it is the successor entity to Ecology and Environment, Inc., which it purchased and absorbed in 2019. Ecology and Environment, Inc. is known to have overseen and taken part in

environmental remediation efforts at the Facility from approximately 1996 through the present. Ecology and Environment, Inc., was a New York based corporation that continues to list its registered agent with the State of Mississippi as CT Corporation System, 8927 Lorraine Rd., Suite 204-A, Gulfport, Mississippi 39503.

60. Defendant First Environment, Inc. is a for-profit corporation in the State of New Jersey with a principal office address located at 10 Park Place, Building 1A, Suite 504, Butler, New Jersey 07405. First Environment, Inc. has a website that lists a local address in the State of Mississippi at 1020 W. 4th Street, Wesson, Mississippi 39191. First Environmental Inc. is known through public filings to have been involved in the environmental remediation efforts at the Facility from the mid-1990s through the present.

61. Defendant AAE Consulting, LLC, is a limited liability company based in the State of Mississippi with its principal office located at 1068 Woodbridge Drive, Brandon, MS 39047. Its registered agent is Michael Slack, with the same location. Upon information and belief, AAE Consulting, LLC, operated as a subcontractor for First Environment, Inc., and was involved in the environmental remediation efforts at the Facility from at least 2016 through the present.

62. Defendant Dames & Moore, Inc., is a corporation based in the State of Delaware with a principal office at 911 Wilshire Blvd., 700, Los Angeles, California 90017. Its registered agent is CT Corporation Systems, located at 8927 Lorraine Road, Suite 204-A, Gulfport, MS 39503. Upon information and belief, Dames & Moore, Inc., was involved in the original designing and implementation of environmental remediation efforts at the Facility from approximately 1987 through 1993.

63. Defendant W.L. Burle Engineers, P.A., is a for-profit corporation based in the State of Mississippi, with a principal office at 111 South Walnut St., Greenville, Mississippi 38701, with its registered agent being William Burle, Jr., 109 South Walnut St., P.O. Box 1293, Greenville, Mississippi 38702. W.L. Burle Engineers, P.A., is known through public filings to have been involved in the environmental remediation efforts at the Facility from approximately 2015 through the present.

64. Defendant Avant Construction is a for-profit corporation created under the laws of the State of Mississippi, with a primary address of 1185 County Road 97, Water Valley, Mississippi 38965. Its registered agent is John Avant, located at the same address. Upon information and belief, Avant Construction operated as a subcontractor for Ecology & Environment, Inc., which was acquired or merged into Defendant WSP USA, Inc., as well as Defendant First Environment, Inc. Upon information and belief, Avant Construction has been involved in continuous monitoring and daily operation and maintenance of the remediation system in Yalobusha County, Mississippi, since at least 2002.

65. Defendant Kevin Moore is an adult resident and citizen of the State of Mississippi, and is an engineer who was a Project Manager of the remediation at the Facility for Defendant W.L. Burle Engineers, P.A. Mr. Moore is believed to have overseen the remediation project, at a minimum, between the years of 2015 through the present as an agent of W.L. Burle Engineers, P.A. Kevin Moore presently resides at 711 Avignon Drive, Ridgeland, Mississippi 39157.

66. Defendant Michael Slack is an adult resident and citizen of the State of Mississippi and is an engineer who was listed as a Project Manager of the remediation system at the Facility for Defendant First Environment, Inc., and/or AAE Consulting, LLC, which he owns and operates. Mr. Slack is believed to have overseen the remediation project at the least between the years of 2015 through the present as an agent of First Environment, Inc., and/or AAE Consulting, LLC. Michael Slack presently resides at 1068 Woodbridge Drive, Brandon, Mississippi 39047.

67. All of the Plaintiffs are joined together in this action as their claims arise out of the same transactions, occurrences, or series of transactions and occurrences described in detail below, and all involve questions of law and/or fact common to all Plaintiffs. Similarly, all of the Defendants are joined in this action based upon their involvement in the same series of transactions, occurrences, or series of transactions and occurrences described in detail below, and all involve questions of law and/or fact common to all Defendants. The facts described below relating to the continuing and ongoing pollution arising from the Facility constitute a transaction or occurrence that is a distinct litigable event linking all the parties.

68. John Doe Corporations 1-5 are those certain corporations who owned, retained, or acquired any of the liabilities arising out of or related to operation of the Facility located on the subject premises through purchase, sale, transfer, conveyance, or distribution to or from Coltec Industries, Inc., Goodrich Corporation, Old Co, LLC, Enpro Industries, or Enpro Holdings. The true names of such defendants are at present unknown to Plaintiffs. When their name(s) are discovered, they will be added to Plaintiffs' pleadings and proper notice will be given to them.

## JURISDICTION AND VENUE

69. This Court has jurisdiction over this civil action pursuant to Miss. Code § 11-11-3. All Plaintiffs suffered injuries which were proximately caused by the tortious conduct of the Defendants in Yalobusha County, Mississippi. Plaintiffs were injured and damaged by their exposure to trichloroethylene and/or other volatile organic compounds due to or as a direct and proximate result of Defendants' intentional, negligent, reckless, wanton, and/or grossly negligent use and discharge of trichloroethylene at or near the premises located at 600 Highway 32 East, Water Valley, Yalobusha County, Mississippi. The actions of the Defendants constitute the same or similar series of actions pursuant to M.R.C.P. 20.

70. Venue is appropriate for this matter in multiple counties within Mississippi. Beyond Yalobusha County being the primary site associated with the harms, injuries, and actions, some of the defendants maintain their principal places of business within Copiah County and/or Washington County, and Defendants W.L. Burle Engineers, P.A., AAE Consulting, LLC, Avant Construction, Kevin Moore, and Michael Slack are all similarly domiciled in the State of Mississippi. If venue is good as to a single defendant, then it is generally good as to all defendants. See Salts v. Gulf Nat. Life Ins. Co., 743 So.2d 371 (Miss. 1999); Forrest General Hospital v. Upton, 240 So.3d 410 (Miss. 2018).

## FACTS

71. On or about November 1972, the Holley Automotive Division of Colt Industries, Inc., which was subsequently renamed Coltec Industries, Inc. in 1990, (and now existing as Coltec, Inc.,

hereinafter "Coltec") acquired the former Ram Tool manufacturing facility located at 600 Highway 32 East in Water Valley, Mississippi (hereinafter "the Facility"), and began manufacturing automotive parts, including, but not limited to, automobile carburetors and related components.

***History of Coltec's TCE Usage at the Facility***

72. Shortly after acquiring the Facility, Coltec purchased and installed a vapor degreaser manufactured by Detrex Chemical Industries, Inc. ("Detrex") to remove the oils, grease, dirt, metal shavings, and other debris and/or contaminants which had accumulated on the automotive parts during the fabrication process.

73. The Detrex degreaser purchased by Coltec used the chemical trichloroethylene, or "TCE," to clean the automotive parts. TCE, a clear, colorless, and non-flammable liquid with a sweet taste and smell, is a volatile organic compound, or "VOC," which is well known as both a degreasing solvent and human carcinogen. TCE is classified as a dense nonaqueous phase liquid, meaning it is heavier than water and, if discharged into the environment, will tend to sink down into the ground and contaminate the water table. TCE can remain volatile in the soil for decades and has the potential to degrade into other carcinogens, such as vinyl chloride.

74. To clean the automotive parts with the Detrex degreaser, an employee would place them into a wire basket, lower the wire basket into the degreasing unit, close the lid on the degreasing unit, and start the machine. The Detrex degreaser would then bathe the parts in TCE liquid and vapor until they were fully cleaned. Once the cleaning process was complete, the employee would lift the basket out of the degreaser, visually inspect the parts to make sure they were clean, and then send them to another area of the Facility for final inspection, packaging, and shipping.

75. The Detrex degreaser was a large machine that required a substantial amount of TCE to operate. To ensure the degreaser had a steady supply of TCE, Coltec purchased and installed a 4,000-gallon above-ground storage tank to hold unused, or "virgin," TCE. That tank was installed outside of the facility and connected directly to the degreaser via an underground pipe.

76. As the Detrex degreaser cleaned the automotive parts with virgin (unused) TCE from the 4,000-gallon storage tank, it produced two forms of TCE waste, one of which was liquid in nature. The other consisted of a semi-solid sludge (referred to in the industry as "still bottoms"). Accordingly, Coltec also purchased and installed a 1,000-gallon above-ground storage tank to hold the liquid TCE waste. That tank also was installed outside. It was connected directly to the degreaser via an underground pipe and primarily was used either to store the liquid TCE waste or to store the TCE that was in the degreaser while the unit itself was being cleaned or undergoing periodic maintenance.

77. While the liquid TCE waste could be drained into the 1,000-gallon storage tank, the TCE sludge, which accumulated inside the bottom of the degreaser, was more difficult to remove. In order to clean the TCE sludge from the degreaser, Coltec directed its employees first to drain as much of the sludge as they could into a fifty-five (55) gallon drum and then manually scoop out the rest. Though Coltec knew or should have known that employees needed to wear personal protective equipment over their skin, eyes, nose, and mouth while cleaning the TCE sludge from the bottom of the degreaser, it failed to inform, instruct, or require its employees to wear any of the personal protective equipment identified in the Detrex degreaser manual.

78. That Coltec did not dispose of its TCE waste responsibly is evident from the fact that it had no policy, plan, or procedure in place for the responsible disposal of its TCE waste. Instead, Coltec decided it would use Mississippi as its "dumping ground for hazardous waste," thereby saving the expense of hiring a licensed chemical disposal company to dispose of its TCE waste.

79. Consistent with that sentiment, Coltec, on at least one occasion, instructed its employees to open the bottom valve on the 1,000-gallon tank and drain all the TCE waste into a ditch behind the Facility. The very next day after that intentional discharge, a Coltec employee noticed approximately twenty (20) dead turtles in the ditch and reported this to his manager and several other co-workers.

80. Coltec was unfazed by the turtles' deaths and more focused on its problem at hand – getting rid of its TCE waste any way it could without incurring the expenses associated with proper disposal. On

numerous occasions, Coltec accomplished its goal by allowing the 1,000-gallon tank to become so full with TCE waste that it would overflow from the tank's top vent and pour down onto the ground.

81. Instead of increasing the size of its waste tank or actually hiring a licensed company to dispose of its TCE waste, Coltec found new and more creative ways to get rid of it. As a result of its prior discharges of TCE waste, Coltec knew the waste would kill weeds and other vegetation on contact. In an effort to kill two birds with one stone, Coltec had its employees spray the TCE waste onto the gravel parking lot and around the buildings at the Facility to control weeds and knock down the gravel dust. Coltec also told employees they could take home as much TCE waste as they wanted to kill the weeds in their own yards. Coltec even gave large quantities of TCE waste to the Yalobusha County Road Department to spray on the county roads and rights-of-way.

82. In addition to its discharge of TCE and TCE waste into the Yalobusha County environment, Coltec also experienced several spills of TCE and TCE waste. After one such spill occurred, the owner of a neighboring property approached Coltec management and informed them that her cattle were getting sick after drinking water from a ditch on Coltec's property. Additional spills were documented by TIWC Environmental Services, Inc. ("TIWC"), who was hired by Coltec, which found multiple "spill(s) of pure phase TCE" after 1976 which "contaminated" the soil and groundwater. TIWC further confirmed that Coltec had discharged TCE into the environment on numerous occasions when the 1,000-gallon waste tank would overflow from the top vent and TIWC documented a loose fitting on the 4,000-gallon tank which actively leaked TCE into the environment for long periods of time.

83. Despite its having knowledge of the dangers that TCE and TCE waste posed to plant, aquatic, and animal life, Coltec was apparently satisfied with its methods for disposing of its TCE waste and, in 1981, ramped up its TCE usage when it bought a new Detrex degreaser to replace the old one and purchased several smaller ultrasonic vapor degreasers which it installed throughout the Facility. Though Coltec purchased, installed, and used more degreasers at that time, it took no measures to increase its capacity for storing or disposing of TCE waste and, until approximately 1983, it did not retain a licensed chemical disposal company to handle the TCE waste for them.

84. On or about January of 1987, Coltec finally quit using TCE as a degreaser/solvent at the Facility. From 1972 to 1987, Coltec records demonstrate it had purchased at least 80,000 gallons of TCE. Those same records also demonstrate that Coltec disposed of approximately 5,775 gallons responsibly, or seven percent (7%), of all waste TCE it had generated.

***Investigation of TCE Contamination Emanating from the Facility***

85. Because TCE is a known carcinogen, the United States Environmental Protection Agency ("USEPA") deems groundwater to be contaminated when the concentration of TCE therein exceeds 5 parts per billion ("ppb"). The value of 5 ppb is referred to as the maximum contaminant level ("MCL") for TCE. The USEPA deems indoor air to be contaminated when the TCE concentration exceeds 26 $\mu g/m^3$.

86. In 1988, Coltec tested the municipal well which supplied water to the Facility and learned that it contained concentrations of TCE above the maximum contaminant level of 5 ppb. Shortly thereafter, Coltec administration began "designing an action plan" which included disclosing the contamination to the Mississippi Department of Environmental Quality ("MDEQ"), "initiat[ing] drinking water construction" by hiring a plumber to connect the Facility to the City of Water Valley water supply so employees would have clean drinking water, prepare "an official Company position regarding the water supply, and to communicate to its employees "that we are connecting into the Water Valley city water system."

87. Upon information and belief, Coltec did not issue a press release that informed the public about its contamination of the municipal well with TCE and only told its employees that the Facility was being connected to the City of Water Valley water supply, that they should not use or drink water from the water fountain or sinks, and that they would be provided bottled water to use and drink until the new water line was connected.

88. Coltec disclosed the TCE contamination to the MDEQ which then conducted further testing and discovered that, not only was the municipal well supplying water to the Facility contaminated, but another domestic well used by a nearby property owner also contained concentrations of TCE above the maximum contaminant level. To determine whether Coltec had contaminated a "significant aquifer

utilized in the site area to provide potable water for municipal, domestic, and industrial purposes," the MDEQ ordered Coltec, *inter alia*, to develop and implement plans to identify the extent of TCE contamination in the area surrounding the facility and remove it from the environment.

89. At MDEQ's direction, Coltec began collecting and testing soil and groundwater samples from property located at or near the Facility which, upon information and belief, contained concentrations of TCE as high as 1,500,000 ppb. It then retained a third-party engineering firm to collect additional samples from borings and monitoring wells to identify the boundaries of the TCE plume and develop a remediation plan.

90. Upon information and belief, the additional sampling revealed that the plume of TCE emanating from the Facility covers approximately 340 acres, measures 3,900 feet long by 2,100 feet wide, and extends from the Facility in a northerly direction toward the Otoucalofa Creek and downtown business district of Water Valley. The following graphical representation depicts the size of the TCE plume and was submitted by Enpro Industries to the MDEQ:




91. To remediate the TCE contamination, Coltec proposed using a process known as "thermal desorption," which required it to place four pumps along the northern boundary of the TCE plume which would push air through the underground substrate and aquifer toward a pump situated near the Facility. The pump situated near the facility would then draw the air up and through a thermal desorption unit which was intended to deactivate the TCE and discharge the inert by-products into the atmosphere.

92. Under the 1990 MDEQ Order, Coltec was required to collect and test samples from monitoring wells located in or near the plume on a monthly basis from 2006 to 2015. However, from June 2008 through June 2013, Enpro Industries[3] did not conduct any of the required sampling and testing required by the MDEQ order. Instead, for approximately six (6) years, Enpro Industries sent a letter to the MDEQ each month wherein it represented that there was "no discharge during the period" because of "equipment malfunctions" or because the system was "down for maintenance."

93. When Enpro Industries started sending the test results from each month's sampling to MDEQ, and of the results during each round of testing, approximately seventeen (17) monitoring wells contained concentrations of TCE well above the maximum contaminant level of 5 ppb, with several containing concentrations of TCE ranging from 1,000 ppb to 4,300 ppb.

94. Coltec's irresponsible and negligent discharge of TCE into the surrounding environment not only contaminated the ground and underlying water table, it also contaminated the air inside the Facility. Through a process known as vapor intrusion, TCE present in the ground underneath the Facility vaporized and infiltrated the indoor environment through cracks in the Facility's foundation. When the air inside the Facility was initially tested, it was found to have concentrations of TCE vapor ranging from 4.65 ug/m3 to 2,820,000 ug/m3, well in excess of the generally accepted indoor air concentration of 1 ug/m3.[4]

---

[3] Based on documents submitted by Enpro to the Securities and Exchange Commission and the Mississippi Department of Environmental Quality, it began managing the liabilities at the Facility site as early as 1996 or as late as 2002.

[4] A "ug/m3" is a measurement for micrograms per cubic meter. This is a measurement for the concentration of hazardous substances such as airborne pollutants like particulate matter, as opposed to the parts per billion measurement used in water pollution.




***TCE Science and the Plaintiffs' Exposure to TCE***

95. TCE is a toxic chemical long known in Mississippi to be so dangerous that it was not considered safe to be used in cattle feed back in the 1950s due to concerns that the cattle developed hemorrhagic diseases and disorders that caused them to bleed out and die from awful and shocking deaths. *See, generally, Nishida v. E.I. Du Pont De Nemours & Co.*, 245 F.2d 768 (5th Cir. 1957); *E.I. Du Pont De Nemours & Co.*, 221 Miss. 378, 73 So.2d 249 (Miss. 1954) (chief cases amongst a widespread phenomenon of litigation in Mississippi involving horrible cattle deaths from TCE infected feed).

96. Humans may be exposed to TCE through ingestion, inhalation, and dermal contact. Thus, an individual can be exposed by breathing TCE vapors that are emitted into the air, by physical contact with TCE on their skin, by drinking groundwater contaminated with TCE, or by eating/drinking food and drinks which have been exposed to TCE vapors in the air.

97. TCE is highly volatile and will evaporate into the air at room temperature. Thus, introduction of TCE vapors into room air is as easy as leaving it in an opened container in a room.

98. Plaintiffs are former employees of the Holley Automotive Division of Colt Industries, Inc., Colt Industries, Inc., Coltec Industries, Inc., Enpro Holdings, Enpro Industries, Goodrich Corporation, OldCo LLC, Solero Technologies, LLC, BorgWarner Emissions Systems LLC, and/or BorgWarner Inc.,

who were exposed to raw TCE, drinking water contaminated with TCE, and/or indoor air contaminated with TCE, and continued to be exposed to TCE through the groundwater, air, and vapor intrusion from the soil of the toxic plume that the Defendants released upon the local community.

99. TCE is a chlorinated solvent and a toxic chemical that is not found in nature.[5] The chemical product was originally developed as an anesthetic that caused humans to lose consciousness or become insensitive to pain. TCE was used in common household cleaning products, tool degreasers, paint removers, and aerosol products for years in the United States. However, it was banned for use in humans by the Food and Drug Administration as early as 1977. It can be found in the air, water, and soil at any places where it is produced or used, as it breaks down slowly and remains in the environment for long periods of time, and readily passes through soil and groundwater. Anyone exposed to TCE may absorb it through his/her skin, through the air, through drinking water, or by eating foods grown or otherwise in contact with TCE.

100. Humans can become exposed to TCE through a variety of methods, the most common of which are inhalation, skin absorption, ingestion, skin contact, or eye contact.[6] Excessive contact with TCE can cause irritation, headaches, visual disturbances, weakness, dizziness, tremors, drowsiness, nausea, vomiting, rashes, cardiac arrhythmias, paresthesia, and liver injuries. It is known to target and damage a wide variety of organs in the human body, most specifically the eyes, skin, respiratory system, heart, liver, kidneys, and the central nervous system in general.

101. TCE is "known to be a human carcinogen based on sufficient evidence of carcinogenicity from studies in humans."[7] This conclusion is "based on epidemiological studies showing that it causes kidney cancer in humans, together with supporting evidence from toxicological, toxicokinetic, and

---

[5] *See, generally*, "Trichloroethylene," *Cancer Causing Substances*, National Cancer Institute, located online as of filing at: https://www.cancer.gov/about-cancer/causes-prevention/risk/substances/trichloroethylene#:~:text=Which%20cancers%20are%20associated%20with,and%2C%20possibly%2C%20liver%20cancer.

[6] National Institute of Occupational Safety and Health. Trichloroethylene, NIOSH Pocket Guide to Chemical Hazards. Atlanta, GA: Centers for Disease Control and Prevention, 2010. Located online as of filing at: https://www.cdc.gov/niosh/npg/npgd0629.html

[7] National Toxicology Program. 2021. Trichloroethylene, Report on Carcinogens, Fifteenth Edition.; Research Triangle Park, NC: U.S. Department of Health and Human Services, Public Health Service.

mechanistic studies demonstrating the biological plausibility of its carcinogenicity in humans. In addition to cancers, TCE exposure is linked to the development of numerous other health related issues.[8] The U.S. Environmental Protection Agency identifies the most dangerous and hazardous toxic waste sites throughout the country and has identified TCE in at least 1,051 of the 1,854 current or former sites subject to regulation under the National Priorities List.

102. In the largest study of TCE exposure to date, the U.S. government has found TCE exposure to be linked to a wide range of physical ailments.[9] The long list of ailments associated with TCE exposure includes, but are not limited to:

- kidney cancer
- non-Hodgkin's lymphoma
- cardiac defects
- leukemia
- multiple myeloma
- end-stage renal disease
- Parkinson's disease
- scleroderma
- chonal atresia
- eye defects
- low birth weight
- fetal death
- major malformations
- miscarriage
- neural tube defects
- oral cleft defects including cleft lip
- small for gestational age
- breast cancer
- cervical cancer
- esophageal cancer
- lung cancer
- cardiac defects
- multiple myeloma
- end-stage renal disease
- scleroderma
- low birth weight
- fetal death

---

[8] Agency for Toxic Substances and Disease Registry (ATSDR). Toxicological Profile for Trichloroethylene (Update). U.S. Public Health Service, U.S. Department of Health and Human Services, Atlanta, GA. 2014. Located online as of filing at: https://wwwn.cdc.gov/TSP/ToxProfiles/ToxProfiles.aspx?id=173&tid=30

[9] Agency for Toxic Substances and Disease Registry (ATSDR). ATSDR Assessment of the Evidence for the Drinking Water Contaminants at Camp Lejeune and Specific Cancers and Other Diseases U.S. Public Health Service, U.S. Department of Health and Human Services, Atlanta, GA. 2017. Located online as of filing at: https://www.atsdr.cdc.gov/sites/lejeune/tce_pce.html.

- Hodgkin's disease
- liver dysfunction and cancers
- ovarian cancer
- prostate cancer
- colon cancer
- impaired immune system function
- neurological effects (delayed reaction times, problems with short-term memory, visual perception, attentions, and color vision)
- neurobehavioral performance deficits (i.e., delayed recall and deficits in visual perception), decreased blink reflex, and mood effects (i.e., confusion, depression, and tension)
- severe, generalized hypersensitivity skin disorder (an autoimmune-related disease)

This list is not exhaustive, as scientific study into the toxic effects of TCE continues to evolve. The Plaintiffs have suffered and/or continue to suffer from health and/or emotional distress stemming directly from the prolonged and continuous poisoning of the air, water, soil, dermal contact, and people within the communities of Water Valley, Mississippi, and the greater Yalobusha County area impacted by the plume created by the conduct of the Defendants.

103. What is most terrifying about the dangers of TCE exposure is that the long-term or routine exposure to it which can lead to the latent appearance of health issues *decades* after the initial exposure to the chemical, in a similar fashion to how long-term exposure to asbestos can lead to hidden health issues that appear years down the line, including various types of cancers along with a wide range of autoimmune related issues.[10]

---

[10] *See, generally*: Cooper, G.S., Makris, S.L., Nieter, P.J., Jinot, J. *Evidence of autoimmune-related effects of trichloroethylene exposure from studies in mice and humans*. Environ. Health Perspect., 117 (2009), pp. 696-702; Parks, C.G., De Roos, A.J. *Pesticides, chemical industrial exposures in relation to systemic lupus erythematosus*. Lupus, 23 (2014), pp. 527-536; Abbot, S., Bossingham, D., Proudman, S., de Costa, C., Ho-Huynh, A. *Risk factors for the development of systemic sclerosis: a systemic review of the literature*. Rheumatol Adv. Pract., 2 (2018), p. ryk041; Hosgood 3rd, H.D., Zhang, L., Tang, X., Vermeulen, R., Qui, C., Shen, M., Smith, M.T., Ge, Y., Ji, Z., Xiong, J., He, B., Reiss, S., Liu, Y., Xie, Y., Guo, W., Galvan, L., Li, L., Hao, Z., Rothman, N., Huang, H., Lan, Q. *Decreased numbers of CD4(+) naïve and effector memory T cells, and CD8+) Naïve T cells, are associated with trichloroethylene exposure*. Front. Oncol., 1 (2011), p. 53; Iavicoli, I., Marinaccio, A., Carelli, G. *Effects of occupational trichloroethylene exposure on cytokine levels in workers*. J. Occup. Envriron. Med., 47 (2005), pp. 453-457.

104. In terms of overall population, Yalobusha County is one of the least populated counties in the State of Mississippi. It is the 62nd most populated county in a state that has a total of 82 counties. Slightly more than 12,000 people reside in the county.[11]

105. Despite its relatively small population, Yalobusha County's history of being polluted and poisoned with TCE by the Defendants has led to its being designated as having, by far, the highest rate of growth in the new diagnosis of all cancers of any county in the State of Mississippi. This information has been compiled and confirmed by the National Institute of Health's National Cancer Institute's State Cancer Profiles.[12] The rapidly increasing "Cancer Cluster" in Yalobusha County is so drastic that despite its tiny population size, at present it ranks 22nd in diagnoses of all cancer types out of the 3,143 counties that make up the United States of America.[13]

106. The Plaintiffs allege that the presence of this "Cancer Cluster" and the massively increasing rates of all cancer types throughout the local population, including the Plaintiffs, is a direct proximate result of the TCE pollution caused by the Defendants to this litigation in Yalobusha County. The conduct and the consequences of the actions of the Defendants constitute a wrong that justice demands be rectified.

***The Impact of the TCE Plume upon the Town of Water Valley***

107. The town of Water Valley has, and continues to be, heavily impacted by the flow of the TCE plume through the groundwater, soil, and air near the plume emanating from the Facility at issue. Documentation within the MDEQ file relating to the plume stemming from the Facility have noted that over the decades the full extent and spread of the plume is unknown. The map referenced within these pleadings only shows the known spread of plume, and the operators of the Facility have repeatedly been informed of this fact through various descriptive warnings on the plume's true nature: that the maps

---

[11] *See* Mississippi Demographic information, located as of filing of this Complaint at: https://www.mississippi-demographics.com/counties_by_population

[12] *See* NIH website data, located online as of filing at: https://statecancerprofiles.cancer.gov/incidencerates/index.php?stateFIPS=28&areatype=county&cancer=001&race=00&sex=0&age=001&type=incd&sortVariableName=recentaapc&sortOrder=desc#results

[13] *See* NIH website data, located online as of filing at: https://statecancerprofiles.cancer.gov/incidencerates/index.php?stateFIPS=00&areatype=county&cancer=001&race=00&sex=0&age=001&type=incd&sortVariableName=recentaapc&sortOrder=desc#results

represent the plume's "suspected perimeter"; that "further data is required to detect and verify the true extent of the plume"; that the true "extent of the environmental harm has not been determined." In short, knowledge about the true nature, extent, and levels of the northward flow of the pollution is currently limited to the places where the operators of the Facility have been compelled to look.

108. At the same time, the MDEQ file documents repeated warnings to the operators of the Facility that the flow of the plume emanating from the Facility flows northward toward the downtown area of Water Valley. For decades, Enpro has been warned that the plume: "has the potential to contaminate downgradient flow of water into the downtown area for decades to come"; and that the plume "is going to move north towards the downtown area." Much of this information has been known by the Defendants since at least the late 1980s. Despite being informed that the plume would continue to migrate, Defendants have made no effort to conduct subsequent exploratory testing outside the alleged plume since its boundaries were delineated in 2016.

109. At present, the known extent of the plume lies only 4,000 feet from downtown Water Valley, a city with a population of just over 3,380 people. The Facility from which the plume emanates is just over 7,000 feet from downtown Water Valley. At no time have the operators of the Facility undertaken any water, soil, or vapor intrusion testing to determine officially whether the TCE plume has continued to flow northward into the Water Valley downtown area, despite repeated warnings that the plume has been anticipated to flow in that direction for decades without proper remediation.

110. The relatively small population of this town is such that the impact of the plume has an outsized impact on the life, health, and quality of the lives of those people who have lived within Water Valley over the last forty to fifty years. The following local businesses and important community locations are all either known to be directly inside the currently known extent of the TCE plume, or they are within the immediate range and expected northward flow path of the TCE plume: the only local hospital; the largest retirement community for the elderly; all of the local family care practice physicians; the local sheriff's department; nearly every local government building or office; dozens of stores, restaurants, and local businesses; the courthouse; the local health clinic; social services offices; the area's largest local event and

wedding center; all local insurance businesses and banks; several of the largest local religious institutions; a soccer field for youth groups; the only local community sports facility containing tennis courts and youth baseball fields; the town library; all mental health services and facilities; grocery stores; book stores; all physical therapy businesses; the local museum; and, all of the local public and private schools for the youth of the community.

111. Almost every single major public or private business, political, judicial, educational, social, religious, or health facility in Water Valley is either directly known to be impacted by the TCE plume as defined by Enpro in 2016 or is otherwise known to be directly on the immediate northern edge and in the direct flow path of the presently known extent of the TCE plume. As recently as 2016, some of the monitoring wells within the TCE plume showed testing levels more than 2,400% higher than the known safety levels for TCE exposure to humans. Other testing of wells has shown testing levels more than 300,000% higher than known safety levels for human exposure.

112. Upon information and belief, a large number of people living within the Water Valley community worked at the Facility as employees.

113. The fact of the overwhelmingly large amount of TCE pollution in this relatively small area underscores the nature of the public health dangers at issue. By way of comparison, MDEQ documentation establishes that a single cup of TCE in a two-acre, six-foot-deep pond would be enough to exceed the acceptable exposure levels for humans. For ease of comparison and by way of extrapolation, that would be roughly equivalent to a one-ounce shot glass of TCE being poured into an Olympic-sized swimming pool. Based upon the records and documentation the Facility operators provided to MDEQ, through the course of the use of TCE at the Facility, roughly 7,125,600 one ounce shot glasses of TCE were polluted into the area surrounding the Facility and flowing north towards Water Valley.

114. All of the Plaintiffs in this lawsuit have spent years of their lives belonging to the Water Valley local community and continue to live there to this day. All of the plaintiffs own real property within or around the immediate area of the plume in such a fashion that the presence of the pollution has or will

impact their property-right interests. All of these Plaintiffs have been and continue to be exposed to TCE pollution in their everyday lives and on their own property, with some residing within a few thousand feet of the immediate area of the 2016 northern boundary of the TCE plume.

115. For these Plaintiffs, and other residents of Water Valley, their everyday activities have and continue to involve constant exposure to the dangers of TCE, long after they stopped working at the Facility. For each of these Plaintiffs, trips to the doctor, houses of worship, children and grandchildren's school events, youth sporting events, visits to friends at retirement homes, and simple trips to the grocery store or local restaurants involve the continued and routine exposure to the toxic pollution of TCE that afflicts the local area.

116. The invisible nature of this harm in no way lessens the impact upon local health and the exercise of public rights, as the local population of Water Valley cannot go to hospitals, public offices, health care facilities, schools, or children's sporting events without being exposed to potentially lethal levels of TCE in the groundwater, soil, and vapor intrusion into buildings close to or within the area of the plume.

117. Some of the Plaintiffs own real estate in the downtown area of Water Valley. Besides simply living there under the daily threat of exposure, they are likely to suffer additional harms by virtue of this property ownership. The Defendants have intentionally refused to perform any additional testing as to the true extent of the TCE plume, with full knowledge that it is expected that the plume has and will continue to flow northward into the downtown area of Water Valley. Upon information and belief, TCE has already invaded and contaminated Plaintiffs' real estate. The dangerous presence and extent of the TCE plume and its effect upon the above-discussed facilities, public buildings, businesses, social meeting places and Plaintiffs' real estate can only result in massive financial harm, including stigma damages, upon their ability to resell property that is so closely located to the TCE plume and the local "Cancer Cluster" that exists in Water Valley.

118. The Facility at issue is a building, structure, site or area where a hazardous substance has been utilized, deposited, stored, disposed of, or placed.

119. Enpro Holdings, Enpro Industries, Coltec, Inc., Goodrich Corporation, OldCo, LLC, Solero Technologies, LLC and/or BorgWarner Emissions Systems LLC are or have been an owner or operator of the Facility during the times in which TCE was present in its various forms at the Facility.

120. The previous release from and continued presence of TCE at the Facility and in the surrounding environment which cause or contributed to the Plaintiffs exposures includes, but is not limited to, the spillage, leakage, pumping, pouring, emission, discharge, and/or overall presence of the toxic pollutant into the environment.

121. At present, the Plaintiffs are without sufficient information to determine who and to what extent some of the parties to this action may have had control, responsibility, or authority over the Facility for the purposes of its remediation.

122. Defendants WSP USA Inc., First Environment, Inc., AAE Consulting, LLC, Dames & Moore, Inc., W.L. Burle Engineers, P.A., Avant Construction, Kevin Moore and Michael Slack are identified in public records as having past and/or present involvement in the remediation efforts at the Facility.

123. Upon information or belief, some person(s) or entity(ies) responsible for and/or involved in the remediation negligently and/or intentionally halted the efforts required by MDEQ, which allowed continued pollution exposure to the Plaintiffs decades after TCE was actively used at the Facility.

124. An internal Coltec, Inc. memorandum dated September 14, 1988, demonstrates the Facility operators had knowledge of the high concentration of TCE at the premises and that it was spreading to other nearby premises, thereby confirming that they were aware that the water table near the Facility was contaminated.

125. On January 26, 1989, Coltec, Inc. held a company conference during which environmental engineers warned several company officials about the serious level of danger to the local soil and groundwater and the real possibility that the plume would flow north toward the town of Water Valley. The focus of the conversation centered entirely on the balance between the threat to the environment versus the cost of the remediation.

126. On November 1, 1991, correspondence from engineers placed Coltec, Inc. on notice that TCE concentration was still being found as high as 190,000 ppb, more than 38,000 times the maximum safety level for human exposure.

127. On December 11, 1992, correspondence from engineers preparing the initial remediation plan put Coltec, Inc. on notice that the excavation plan it had selected to move forward with at the Facility was likely to be unsuitable to comply with environmental regulations for the cleanup. Said correspondence explicitly cautioned the Facility operators that the selected remediation plan would likely do nothing to alleviate the migration of the TCE plume northwards toward Water Valley.

128. On November 30, 1993, Coltec, Inc. notified MDEQ that it had made a decision to abandon its initial plan and selected another engineering firm to perform an even "less expensive yet environmentally responsible" remediation project than the initial plan which it knew was unsuitable. This process was known as thermal desorption.

129. MDEQ documentation from 1995 shows that calls to the Facility resulted in personnel explaining that no efforts at thermal desorption were occurring.

130. Starting on January 26, 2008, remediation efforts stopped entirely. For the next fifty-six (56) months, or through June 7, 2013, correspondence would be sent to MDEQ which, in additional to being virtually identical, simply reported that the groundwater Discharge Monitoring Report was "shut down for repairs" and, paradoxically, that there was "no discharge during the period." This course of conduct effectively halted all efforts at remediation for several years.

131. On August 21, 2015, MDEQ notified the Facility operators that it was aware that the groundwater extraction system had been shut down since 2008 without any authority or permission to do so. MDEQ also informed the Facility operators that the full extent of the plume had still not been identified and/or delineated. No explanation was ever provided for why the remediation efforts were stopped or who bore responsibility for the decision.

132. Based upon all available public documentation, no efforts have been made by any of the Defendants to provide the Plaintiffs with proper and appropriate notice of the potential hazards they were exposed to or the nature of any of the potential health risks associated with exposure to TCE.

## CAUSES OF ACTION

### Count 1: Products Liability

### Against Defendants Detrex Corporation and Italmatch USA Corporation

133. The Plaintiffs incorporate by reference the previous paragraphs of this Complaint as if fully rewritten herein.

134. The Plaintiffs have claims against Detrex Corporation, and Italmatch USA Corporation for product liability for the dangerous nature of TCE.

135. Defendant Detrex Corporation was the manufacturer and distributor of the equipment and solvents responsible for the TCE pollution at issue herein.

136. EnPro Industries and EnPro Holdings served as the purchaser and end-user of those products in the stream of commerce.

137. Defendant Italmatch USA Corporation purchased, acquired, and/or merged with Detrex Corporation and, accordingly, are liable as successors in interest under the laws of the State of Mississippi. Upon information and belief, Detrex Corporation became an Italmatch subsidiary after the purchase, acquisition, and/or merger.

138. The Defendants in this Count are subject to product liability claims for failure to warn and/or failure to adequately warn the Plaintiffs of the hazards associated with exposure to TCE.

139. Accordingly, each of the Defendants in this Count are liable for the damages TCE exposure caused the Plaintiffs as a proximate result of the use and exposure to their dangerous and defective product.

### Count 2: Negligence

### Against Defendants WSP USA Inc., First Environment, Inc., AAE Consulting, LLC, Dames & Moore, Inc., W.L. Burle Engineers, P.A., Avant Construction, Kevin Moore, and Michael Slack

140. The Plaintiffs incorporate by reference the previous paragraphs of this Complaint as if fully rewritten herein.

141. The Plaintiffs are asserting claims against Defendants WSP USA Inc., First Environment, Inc., AAE Consulting, LLC, Dames & Moore, Inc., W.L. Burle Engineers, P.A., Avant Construction, Kevin Moore and Michael Slack arising out of or in connection with their management of the remediation required by MDEQ.

142. These Defendants were involved for the purpose of initiating and continuing environmental remediation of the polluted Facility over the course of years and/or decades.

143. Mississippi law imposes on engineers and other design professionals the duty to exercise ordinary professional knowledge, skill, and diligence, and has found that such professionals undertake additional express and/or implied duties and responsibilities.

144. The Defendants have caused or contributed to causing the failure to satisfactorily remediate the Facility and surrounding environment despite knowing that said area was polluted with TCE for over forty years. This includes the failure to comply with the agreed upon remediation required by MDEQ which is evidenced by the unilateral termination of remediation efforts over a six year period without any excuse or justification provided.

145. While environmental engineering firms involved in attempts to remediate pollution are not immune from liability for damages that are the direct result of the negligence of the firm undertaking the work. Additionally, the liability of subcontracting engineers or fiduciaries is still without limitation if their negligence causes or contributes to the release or threatened release of a toxic substance such as TCE. 42 U.S.C. § 9607(n). This includes situations where negligent remediation efforts such as soil borings and site supervision allow for continued spreading of pollution. *See U.S. CDMG Realty Co.*, 96 F.3d 706 (3rd Cir. 1996); *Blasland, Bouck & Lee, Inc. v. City of North Miami*, 96 F. Supp. 2d 1375 (S.D. Fla. 2000).

146. WSP USA Inc., First Environment, Inc., AAE Consulting, LLC, Dames & Moore, Inc. W.L. Burle Engineers, P.A., Avant Construction, Kevin Moore and Michael Slack were all involved in

undertaking certain duties to effectuate, supervise, maintain, and carry out the remediation of the site over numerous years.

147. The Plaintiffs allege that these Defendants breached those duties by failing to properly remediate the property in a fashion that prolonged the spread of TCE and allowed continued exposure to the Plaintiffs.

148. As a proximate result of Defendants' breach, the Plaintiffs have directly suffered injuries through continued exposure to massive levels of TCE in the environment surrounding Water Valley, Mississippi.

## <u>Count 3: Wrongful Death</u>

### Against Defendants Detrex Corporation and Italmatch USA Corporation

149. The Plaintiffs incorporate by reference the previous paragraphs of this Complaint as if fully rewritten herein.

150. Plaintiffs have claims against Detrex Corporation and Italmatch USA Corporation for product liability for the dangerous nature of TCE, as noted above at Count 1.

151. For purposes of this Count, Plaintiff representatives shall hereinafter be referred to as "Decedent Plaintiff Representatives," and the deceased injured parties shall hereinafter be referred to as "Decedents."

152. Plaintiff, Tommie Turner, individually and as representative of the wrongful death beneficiaries of Annie Ruth Nicholson, seek claims against the above-referenced Defendants for their wrongful conduct in exposing Decedents to TCE and for the resulting injuries and harms stemming from such exposure. This includes claims for survivorship and wrongful death, including all injuries and damages sustained by Decedents, stemming from the exposure that was a proximate and/or contributing cause of their deaths.

153. As the death of Decedents was a direct result of the wrongful conduct of the Defendants, Decedent Plaintiff Representatives seek all survival and wrongful death damages available by law,

including, but not limited to, funeral expenses, medical expenses, loss of society and companionship, pain and suffering, and the untimely demise of Decedents.

**Count 4: Wrongful Death**

**Against Defendants WSP USA Inc., First Environment, Inc., AAE Consulting, LLC, Dames & Moore, Inc., W.L. Burle Engineers, P.A., Avant Construction, Kevin Moore, and Michael Slack**

154. The Plaintiffs incorporate by reference the previous paragraphs of this Complaint as if fully rewritten herein.

155. Plaintiffs have negligence claims against Defendants WSP USA Inc., First Environment, Inc., AAE Consulting, LLC, Dames & Moore, Inc., W.L. Burle Engineers, P.A., Avant Construction, Kevin Moore and Michael Slack, as noted above in Count 2.

156. For purposes of this Count, Plaintiff representatives shall hereinafter be referred to as "Decedent Plaintiff Representatives," and the deceased injured parties shall hereinafter be referred to as "Decedents."

157. Plaintiff, Tommie Turner, individually and as representative of the wrongful death beneficiaries of Annie Ruth Nicholson, seek claims against the above-referenced Defendants for their wrongful conduct in exposing Decedents to TCE, and for the resulting injuries and harms stemming from such exposure. This includes claims for survivorship and wrongful death, including all injuries and damages sustained by Decedents, stemming from the exposure that was a proximate and/or contributing cause of their deaths.

158. As the death of Decedents was a direct result of the wrongful conduct of the Defendants, Decedent Plaintiff Representatives seek all survival and wrongful death damages available by law, including, but not limited to, funeral expenses, medical expenses, loss of society and companionship, pain and suffering, and the untimely demise of Decedents.

## PUNITIVE DAMAGES

159. Because Defendants' above-described acts of creating, transporting, and the ultimate discharging of trichloroethylene into the environment constitutes gross negligence which evidences a willful, wanton, and/or reckless disregard for the safety of others, including the Plaintiffs. Accordingly, Defendants are liable to Plaintiffs for punitive and/or exemplary damages.

## DAMAGES

160. As a direct and proximate result of Defendants' tortious conduct, the Plaintiffs have suffered and sustained the following injuries and damages for which Plaintiffs demand judgment of and from Defendants for:

a. Past, present, and future damages for physical and personal bodily injuries for which they have sought and continue to seek medical treatment, all of which have caused them to endure, and continue to endure, immense physical pain, suffering, and mental anguish;

b. Past, present, and future pain, mental and emotional distress, anguish, depression, anxiety and loss of enjoyment and freedoms of public and private life;

c. Past, present, and future medical expenses;

d. Past, present, and future lost wages;

e. Past, present, and future loss of earning capacity;

f. Permanent disability and diminished life expectancy;

g. Loss of consortium;

h. Damages arising from the wrongful death of Decedents which are identified in the forgoing Counts;

h. Pre-judgment interest;

i. Punitive and/or exemplary damages;

j. Any damages that may be categorized as 'medical monitoring' damages available under the laws of the State of Mississippi. *See Paz v. Brush Engineered Materials, Inc.*, 949 So.2d 1 (Miss. 2007); and,

k. All other damages proven at trial and/or allowed by law, rule, or equity.

**JURY DEMAND**

Plaintiffs demand a jury trial as to all issues so triable.

**THIS,** 7th day of April 2026.

**GEORGE F. HOLLOWELL, JR. (MSB # 2559)**
**ANDREW F. TOMINELLO (MSB #104183)**
HOLLOWELL LAW FIRM
P.O. Drawer 1407
Greenville, MS 38702-1407
Telephone: (662) 378-3103
Facsimile: (662) 378-3420
E-mail: gfh@hollowelllawfirm.com
aft@hollowelllawfirm.com

Philip C. Hearn, Esq. (MSB# 9366)
HEARN LAW FIRM, PLLC
Post Office Box 5009
Jackson, Mississippi 39296
Telephone: 662-766-7777
Facsimile: 662-524-3530
philip@hearnlawfirm.net

***Attorneys for Plaintiffs***